UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT
N.D. OF N.Y.

APR 11 2003

LAWRENCE K. BAERMAN, CLERK
ALBANY

03-CV-0449
DNH RFT

---

NEW YORK ACCESS BILLING, LLC.;
RCN TELECOM SERVICES, INC.; BROADVIEW
NETWORKS, INC.; BROADVIEW NETWORK
PLUS ACQUISITION CORP.; ESSEX
COMMUNICATIONS CORP.; SPECTROTEL,
INC.; CONVERSENT COMMUNICATIONS
OF NEW YORK, LLC.; CONVERSENT
COMMUNICATIONS OF NEW JERSEY, LLC;
CONVERSENT COMMUNICATIONS OF
MASSACHUSETTS, LLC; CONVERSENT
COMMUNICATIONS OF CONNECTICUT, LLC
and CABLEVISION LIGHTPATH, INC.,

Plaintiffs,

- against -

ATX COMMUNICATIONS, INC.; CoreComm
LIMITED; ATX LICENSING, INC.; CoreComm NEW
JERSEY, INC.; CoreComm VIRGINIA, INC.; ATX
TELECOMMUNICATIONS SERVICES OF
VIRGINIA, LLC; CoreComm MARYLAND, INC.;
and CoreComm NEW YORK, INC.,

Defendants.

---

COMPLAINT FOR MONETARY DAMAGES

Plaintiffs, through their attorney, complaining of defendants, respectfully
allege as follows:

Nature of Case

1.  Plaintiffs (except for New York Access Billing, LLC, which is a billing agent) provide local exchange telephone services as Competitive Local Exchange Carriers (CLECs) in various states, including New York.  The defendants, operating through various names, affiliates and corporate identities, are interexchange telecommunications carriers (IXCs) which provide toll services in the states where plaintiffs operate.

2.  Plaintiffs' local exchange customers originate long distance calls using the defendants' long distance telephone services, or receive long distance calls from other persons who use the defendants' long distance services.  In either case, the plaintiffs provide the defendants originating or terminating carrier access services, which allow such toll calls to be originated from, or terminated to, the plaintiffs' local customers.

3.  Carrier Access Services are telecommunications services subject to the jurisdiction of federal and state regulatory agencies.  Under state and federal regulatory law and policies, plaintiffs are entitled to charge the defendants for the originating and terminating carrier access services provided to the defendants.  The rates for those services are set forth (a) for intrastate services, in tariffs filed with state regulatory commissions, and (b) for interstate services, either in tariffs filed with the Federal Communications Commission or pursuant to rates posted on the carrier's website in accordance with FCC rules.

4.  Defendants deliberately order, accept and make use of the carrier access services provided by the plaintiffs.  Nonetheless, defendants have repeatedly

2

refused to pay the lawful bills issued by the plaintiffs for those access services.
Accordingly, this suit seeks to collect from the defendants the lawful charges owed to
the individual plaintiffs for the interstate and intrastate carrier access services provided
to, and used by, the defendants through November 30, 2002, plus applicable interest
and attorneys fees.  Plaintiffs preserve all rights with respect to defendants' non-
payment of monies due for access services provided subsequent to November 30,
2002.

<p style="text-align:center">Parties, Jurisdiction and Venue</p>

5.  Plaintiff New York Access Billing, LLC. (Access Billing) is a New York
Limited Liability Company with principal offices in Albany, New York.  Access Billing
performs billing and collection services on behalf of the other plaintiffs, including the
issuing of bills for intrastate and interstate access services to defendants for the access
services provided by the plaintiffs to defendants.  Access Billing is the designated agent
of the other plaintiffs and is entrusted by the other plaintiffs to render accurate bills to,
and collect monies from, the defendants.

6.  Plaintiff RCN Telecom Services, Inc. (RCN) is a Pennsylvania
corporation, with principal office at 105 Carnegie Center, Princeton, New Jersey 08540,
and is authorized to do business in the State of New York.  RCN possesses a
Certificate of Public Convenience and Necessity to operate as a local exchange
telephone corporation in New York, Massachusetts, Maryland, Virginia and
Pennsylvania, and provides intrastate carrier access services in those states.

7.  RCN provides intrastate carrier access service in New York pursuant to

<p style="text-align:center">3</p>

its Tariff PSC No. 7 - Telephone and in the other indicated states pursuant to approved intrastate tariffs.

8.  RCN provides interstate carrier access services in New York, Virginia, Massachusetts, Maryland, Pennsylvania, and the District of Columbia pursuant to its Tariff FCC No. 1.

9.  Plaintiff Broadview Networks, Inc. (Broadview) is a New York corporation with principal business address at 59 Maiden Lane, New York, New York 10038.  Broadview possesses a Certificate of Public Convenience and Necessity, or other required authority, to operate as a local exchange telephone company in the states of New York, Massachusetts, New Jersey, and Pennsylvania.

10.  Broadview provides intrastate carrier access services in New York pursuant to its Tariff PSC No. 3 - Access; in Massachusetts pursuant to its tariff MDTE No. 1; in New Jersey pursuant to its tariff BPUNJ No. 2; and in Pennsylvania pursuant to its tariff PA PUC No. 5.

11.  Broadview provides interstate carrier access services in New York, Massachusetts, New Jersey and Pennsylvania pursuant to its FCC Tariff No. 3.

12.  Plaintiff Broadview Network Plus Acquisition Corp. (Broadview Network Plus) is a Delaware corporation with a principal office at 59 Maiden Lane, New York, New York 10038.  Broadview Network Plus possesses a Certificate of Public Convenience and Necessity, or other required authority, to operate as a local exchange telephone company in the states of New York, Massachusetts, Pennsylvania, New Jersey and Connecticut.

13.  Broadview Network Plus provides intrastate carrier access services in

4

New York pursuant to its Tariff PSC No. 2 - Access; in Massachusetts pursuant to its Tariff MDTE No. 3; in Pennsylvania pursuant to its Tariff PAPUC No. 3; in New Jersey pursuant to its Tariff BPUNJ No. 2; and in Connecticut pursuant to its Connecticut Tariff.

14.  Broadview Network Plus provides interstate carrier access services in New York, Massachusetts, Pennsylvania, New Jersey, Florida, and Connecticut pursuant to its FCC Tariff No. 4.

15.  Plaintiff Spectrotel, Inc. (Spectrotel) is a Delaware corporation with its principal place of business at 655 Shrewsbury Avenue, Shrewsbury, New Jersey 07702.  Spectrotel is the successor in interest to Advamtel, LLC and Plan B Communications, Inc.  Spectrotel possesses a Certificate of Public Convenience and Necessity, or other required authority, to operate as a local exchange telephone corporation in New York, New Jersey, Massachusetts, and Pennsylvania, and provides intrastate carrier service in those states.

16.  Spectrotel provides intrastate carrier access services in New York pursuant to its Tariff PSC No. 2 - Access; in Massachusetts pursuant to its MDTE Tariff - Access; and in other indicated states pursuant to approved intrastate tariffs.

17.  Spectrotel provides interstate carrier access services in New York, New Jersey, Pennsylvania and Massachusetts pursuant to its FCC Tariff No. 2.

18.  Plaintiff Essex Communications Corp. (Essex) is a New York corporation with a principal address of 543 Main Street, New Rochelle, New York 10801.  At all relevant times, Essex possessed a Certificate of Public Convenience and Necessity to operate as a local exchange telephone company in the states of New

York, Massachusetts, Pennsylvania, New Jersey and Virginia, and provides intrastate access service in those states.

19. At all relevant times, Essex provided intrastate carrier access services in New York pursuant to its PSC Tariff No. 6, and in the other indicated states pursuant to approved intrastate tariffs.

20. At all relevant times, Essex provided interstate carrier access services in New York, Massachusetts, Pennsylvania, Virginia and New Jersey pursuant to its Tariff FCC No. 3.

21. Plaintiff Conversent Communications of New York, LLC. (Conversent) is a New York Limited Liability Company; Conversent Communications of New Jersey, LLC is a New Jersey Limited Liability Company; Conversent Communications of Connecticut, LLC is a Connecticut Limited Liability Company; Conversent Communications of Massachusetts, LLC is a Massachusetts Limited Liability Company. The foregoing plaintiffs are corporate affiliates, and are collectively referred to as "The Conversent Companies". Each Conversent Company has its principal place of business at 313 Boston Post Road West, Marlboro, Massachusetts 01752. Each Conversent Company, respectively, possesses a Certificate of Public Convenience and Necessity, or other required authority, to operate as a local exchange carrier in one of the States (as indicated in its name) of New York, New Jersey, Connecticut, and Massachusetts, and provides intrastate access services in those states.

22. Each Conversent Company provides intrastate carrier access in its respective state pursuant to an intrastate Access Services Tariff on file with the relevant state.

6

23.  Each Conversent Company provides interstate carrier access services in its respective state pursuant to its FCC tariff, which for each company is a concurrence in the tariff FCC No. 6 of Conversent Communications Long Distance, LLC.

24.  Plaintiff Cablevision Lightpath, Inc. (Cablevision) is a Delaware corporation, with a principal place of business at 111 New South Road, Hicksville, New York 11801.  Cablevision possesses a Certificate of Public Convenience and Necessity or other required authority to operate as a local exchange carrier in the State of New York, New Jersey, and Connecticut, and provides intrastate carrier access in those states.

25.  Cablevision provides intrastate carrier access in New York pursuant to its effective access services tariff on file with the New York State Public Service Commission, which is a concurrence in Verizon New York's PSC No. 8 tariff, and pursuant to other intrastate tariffs in New Jersey and Connecticut.

26.  Cablevision provides interstate access services in New York, New Jersey and Connecticut pursuant to prices authorized by the Federal Communications Commission and posted on Cablevision's website pursuant to FCC requirements.

27.  The defendants are ATX Communications, Inc. and several of its direct or indirect subsidiaries, named below, which provide toll services in the states in which the plaintiffs operate as local telephone companies.  Upon information and belief:

(a)    ATX Communications, Inc. ("ATX Communications"), is a Delaware corporation with its principal place of business in Pennsylvania.

7

Until recently, ATX Communications was known as CoreComm Holdco, Inc., the operating subsidiary of CoreComm Limited. As the result of a merger, CoreComm Limited was merged into CoreComm Holdco, and CoreComm Holdco assumed ownership of all of the business operations formerly owned by CoreComm Limited. Two weeks later, CoreComm Holdco changed its name to ATX Communications.

(b)    CoreComm Limited, formerly known as ATX Telecommunications Services, Inc. ("CoreComm") is an entity affiliated with the other defendants which provides toll services to customers in New York. CoreComm was issued a Certificate of Public Convenience and Necessity by the New York State Public Service Commission in Case 92-C-0796 on November 17, 1992.

( c)   ATX Licensing, Inc. ("ATX Licensing"), is a Delaware corporation with its principal place of business in Pennsylvania. ATX Licensing is the successor-in-interest to ATX Telecommunication Services, Ltd.

( d)   CoreComm New Jersey, Inc. ("CoreComm New Jersey"), is a Delaware corporation with its principal place of business in New York.

8

(e)     CoreComm Virginia, Inc. ("CoreComm Virginia"), is a Delaware corporation with its principal place of business in New York.

(f)     ATX Telecommunications Services of Virginia, LLC ("ATX Virginia"), is a Virginia limited liability corporation, with its principal place of business in Pennsylvania.

(g)     CoreComm Maryland, Inc. ("CoreComm Maryland"), is a Delaware corporation with its principal place of business in New York.

(h)     CoreComm New York, Inc. ("CoreComm New York"), is a Delaware corporation with its principal of business in New York.

28.   ATX Communications, ATX Services; ATX Licensing; and the CoreComm state entities (such as CoreComm New York) ("CoreComm State Entities") share a unity of interests and ownership and operate as a single entity.  Upon information and belief, all of the CoreComm State Entities were incorporated by and are owned by ATX Communications, or its predecessor-in-interest.  Upon information and belief, the CoreComm State Entities lack separate assets or identity.  Upon information and belief, these companies, and all of the named defendants, are merely shell corporations controlled by ATX Communications, and exist only as financial conduits for its business ventures.  Upon information and belief, the CoreComm State Entities lack their own employees, are inadequately capitalized, and operate out of the corporate

9

headquarters of ATX Communications, in addition to other indicators of their status as mere shells. Upon information and belief, ATX Communications controls the essential operations of each CoreComm State Entity, including providing corporate direction, strategic business planning, and executive supervision.

29. Upon information and belief, the CoreComm State Entities and all the defendants also share a common marketing image and logo, and are held out to the public as a single, integrated entity. Upon information and belief, all of the CoreComm State Entities do business as CoreComm (the name of ATX Communications until July, 2002). Upon information and belief, all advertising for the CoreComm State Entities is conducted by a single entity, which uses the same CoreComm name and logo for all of the CoreComm State Entities. Moreover, the CoreComm website (http://www.corecomm.com) gives no indication that service is provided by different entities in different states. To the contrary, the website - and, upon information and belief, the CoreComm defendants generally - work to create the appearance that CoreComm is a single, integrated entity.

30. Upon information and belief, ATX Services, ATX Licensing, and ATX Virginia share a unity of interests and ownership and operate as a single entity. Upon information and belief, ATX Virginia and ATX Services were formed by ATX Licensing, or one of its predecessor-in-interests or affiliates. Upon information and belief, ATX Virginia and ATX Services lack separate assets or identity. Upon information and belief, ATX Virginia and ATX Services are merely shell corporations controlled by ATX Licensing, and exists only a financial conduit for its business ventures. Upon information and belief, ATX Virginia and ATX Services lacks their own employees, are

10

inadequately capitalized, and operate out of the offices of ATX Licensing, in addition to other indicators of their status as mere shells.  Upon information and belief, ATX Licensing controls the essential operations of ATX Virginia and ATX Services, including providing corporate direction, strategic business planning, and executive supervision.

31.  Upon information and belief, ATX Virginia, ATX Services, and ATX Licensing share a common marketing image and logo, and are held out to the public as a single, integrated entity.  Upon information and belief, all advertising for ATX Virginia and ATX Services is controlled by ATX Licensing, or one of its affiliates, and the same ATX name and logo is used for all three companies.  Moreover, the ATX website (http://www.atx.com) gives no indication of any distinction between the companies.  To the contrary, the website - and, upon information and belief, the entities themselves - work to create the appearance that ATX is a single, integrated entity.

32.  This action seeks to collect monies owed for interstate telecommunications services based upon federal statute, federal tariffs or authorized federal rates, and common law, and for intrastate telecommunications services based upon state statutes, tariffs, and common law.  This Court has subject matter jurisdiction of claims related to interstate telephone service under 28 U.S.C. § 1331, and of claims related to intrastate telephone service under the Supplemental Jurisdiction of 28 U.S.C. § 1367.  Defendants reside, can be found, or transact business in the State of New York and the Northern District thereof; certain of the plaintiffs conduct business in the State of New York and the Northern District of New York; the claims asserted by each of the plaintiffs, in part, arise out of the defendants' conduct in New York and in the Northern District; and each of the defendants was injured, in part, in the State of New

York and the Northern District.  Venue is proper pursuant to 28 U.S.C. §1391( b )( c ).

## Background Facts

33.  The National Telecommunications Network is an interconnection of local, long distance and specialized carriers.  Toll calls originate with end user customers of local exchange telephone companies.  When these end users originate a toll call, the call is delivered by the originating end user's local exchange carrier to the Point of Presence (POP) of the interexchange carrier (IXC) chosen by the caller.  The IXC then transports the call from the originating city to the terminating city (which may be in the same state or in a different state).  At the terminating city, the call is delivered from the POP of the IXC to the local exchange carrier serving the called party, and then routed by that local exchange company to the called party.  On the originating end, the service provided by the local exchange company is called originating carrier access service, and on the terminating end the service provided by the local exchange company is called terminating carrier access service.  The rates charged by local exchange carriers for originating and terminating intrastate carrier access service are set forth in tariffs filed with and approved by state public utility commissions.  The rates charged for originating and terminating interstate carrier access are either (a) set forth in tariffs filed with the Federal Communications Commission or (b) posted on carrier websites as authorized by, and in accordance with, FCC rules.

34.  In addition to setting forth applicable rates for access services, these state and federal tariffs or website postings set forth other rules, terms, and conditions, such as requiring payment of late fees on past due balances, and payment of attorneys

12

fees when litigation is required to collect monies owed.

35.  For the transactions involved here, IXCs could not originate a toll call, or terminate a toll call in a distant city, unless they obtained originating and terminating carrier access from the local exchange carrier serving the calling and called parties. IXCs directly benefit from the carrier access services provided by local exchange carriers by being able to receive toll revenues on toll calls which could not be completed except for the originating and terminating access pieces provided at each end of the call by the local exchange companies.

36.  Under the integrated state and federal telecommunications schemes, interexchange toll carriers are fully aware that if they order, accept or make use of the originating or terminating carrier access services provided by local exchange companies, they are required to pay the charges for such access services which appear in the relevant state or FCC tariffs, or as posted on carrier websites.  IXCs not wishing to pay the rates for access services set forth in these tariffs or websites have the ability to block traffic from or to local exchange carriers (and their end users) whose rates for access services the IXC does not wish to pay.  In such case, the IXC would not be able to accept toll calls from customers served by that local exchange company, and could not terminate toll calls to customers served by that local exchange company.

37.  The plaintiffs in this proceeding are known as Competitive Local Exchange Carriers (CLECs), in contrast to the Incumbent Local Exchange Carriers (ILECs) such as Verizon, which previously possessed a monopoly on the provision of local exchange telephone services and carrier access services.  Since passage of the Federal Telecom Act of 1996, CLECs have been authorized to provide the same local

exchange services, and carrier access services, as ILECs have traditionally provided.
While in the past IXCs were required to pay carrier access charges to the ILECs
(because all telephone end users were customers of ILECs), as competition has
developed, many customers have become subscribers of CLECs instead of ILECs.  In
these circumstances, IXCs have been required to pay carrier access charges to the
CLECs when toll calls are originated from CLEC customers or terminated to CLEC
customers.

      38.  Each of the plaintiffs, directly or through a predecessor in interest, is
authorized to provide local exchange services and carrier access services.  Each
plaintiff has provided interstate and intrastate carrier access services to one or more of
the defendants, which defendants have ordered, accepted or used.

      39.  For each of the plaintiffs here, the billing of interstate and intrastate
carrier access charges is done by New York Access Billing LLC (Access Billing), a
billing service provider which, on behalf of the plaintiffs, and as their agent, analyzes the
call records of the CLECs and issues the appropriate bills for access services to the
appropriate IXC.  That is the process which was applicable here in connection with the
access services provided by the plaintiffs to the defendants.

      40.  However, despite the periodic monthly bills for carrier access services
provided by the plaintiffs to the defendants, which bills were issued to the defendants
by Access Billing as agent for, and on behalf of, the individual named plaintiffs, the
defendants have, despite repeated demands, refused to pay the lawful originating and
terminating access charges due to each of the plaintiffs.

      41.  As of the bills issued to defendants by Access Billing on or about

14

December 15, 2002, covering access services provided through November 30, 2002, in the indicated states, there was due and owing to each of the plaintiffs, from the defendants, plus interest, in accordance with the relevant and applicable interstate tariffs or website postings, or intrastate access tariffs, the amounts, by state, for the originating and terminating carrier access services (both interstate and intrastate) provided within each such state as set forth in Exhibit "A" to this Complaint.

### CAUSES OF ACTION

#### Count I (Claim Under FCC Tariffs and Website Postings)

42.  The plaintiffs restate and reallege the contents of paragraphs 1 - 41 hereof with the full force and effect as if set forth hereat.

43.  Each plaintiff has on file with the FCC a lawful tariff, or has, in accordance with FCC procedures and authorizations, posted rates on its website, setting forth the charges, terms and conditions governing the ordering, provision, and use of interstate access services provided by the plaintiffs to the defendants.  Such tariffs or postings require the payment of late fees on overdue balances, and payment of costs, including attorneys fees, if a carrier is required to initiate litigation to collect amounts owed.

44.  The rates charged by plaintiffs are authorized in the tariffs which have been properly filed with the FCC, or have been posted on a carrier's website, and are lawful and binding on the defendants.  Such tariffs and postings are legally enforceable, and constitute an enforceable agreement between the individual plaintiffs and any of the defendants ordering, accepting or using the access service covered by such tariffs

15

or postings.

45.  The rates charged for interstate access services by the plaintiffs to the defendants have been the lawful rates set forth in each plaintiff's lawful FCC tariffs or website postings.

46.  Separate contracts governing the provision of, and charges for, access service utilized by the defendants are not required as a matter of law.  Instead, as a matter of law, the ordering, acceptance or use of carrier access services by the defendants creates an obligation, under federal law, for the defendants to pay the charges for said interstate access services as set forth in each plaintiffs' applicable FCC tariff or website postings.

47.  Each of the plaintiffs, and each of the defendants, is a common carrier subject to the provisions of the Federal Communications Act of 1934 as amended (47 USC Section 151, et seq.).

48.  Pursuant to Section 206 of the Federal Communications Act of 1934, entitled "Carrier's Liability for Damages", each of the defendants is liable to the plaintiff for the lawful charges for interstate carrier access services billed by the plaintiffs which the defendants refuse to pay.  Section 206 of the Federal Communications Act of 1934 specifies that a carrier which engages in unlawful conduct shall, in addition to being held liable for damages, also be liable for reasonable attorneys fees to be fixed by the court in every case of recovery.

49.  Section 207 of the Federal Communications Act of 1934, entitled Recovery of Damages, authorizes any person damaged by any common carrier subject to the provisions of the Federal Communications Act of 1934 to bring suit for the

recovery of damages in any District Court of the United States of competent jurisdiction.

50.  The defendants have repeatedly been billed for applicable interstate access charges by Access Billing on behalf of plaintiffs, and payment has repeatedly been demanded.  However, defendants have refused to pay the lawful amounts billed.

51.  The defendants have provided no lawful justification or excuse for their refusal to pay the lawful charges for interstate access services billed by the plaintiffs to the defendants and demanded herein.

52.  As a result of the conduct of the defendants, each of the plaintiffs has been damaged in the amounts set forth in Exhibit "A", together with interest at the legal rate, together with plaintiffs' cost of collection, including reasonable attorneys fees to be fixed by the Court.

## Count II (Claim Under State Tariffs)

53.  The plaintiffs restate and reallege the contents of paragraphs 1 - 52 hereof with the full force and effect as if set forth hereat.

54.  Each of the plaintiffs is duly authorized to provide intrastate carrier access services in the states where they operate.  Each plaintiff has on file with the indicated state public utility commissions valid and lawful tariffs governing the provision of intrastate carrier access services, including those provided by the plaintiffs to the defendants.  Those tariffs set forth the applicable rates, and also contain provisions requiring the payment of late payment fees and attorneys fees incurred in collecting amounts due.

55.  The rates charged for intrastate access services by the plaintiffs to

the defendants have been the lawful rates set forth in each plaintiff's lawful tariffs applicable to each state.

56.  Under the laws of the indicated states, such tariffs have the force and effect of law.  Such tariffs constitute enforceable agreements between the plaintiffs and the defendants, which require the defendants to pay the charges set forth in such state access tariffs for the intrastate carrier access services provided by the plaintiffs to the defendants, and utilized by the defendants in the conduct of their business.

57.  The defendants have repeatedly been billed by Access Billing on behalf of the plaintiffs, and payment has repeatedly been demanded.  Nonetheless, the defendants have refused to pay such bills, and have failed to provide any lawful justification or excuse for refusing to pay the intrastate access charges lawfully billed by each of the plaintiffs.

58.  As a result of defendants' unlawful conduct, each of the plaintiffs has been damaged in the amount set forth in Exhibit "A" with respect to the claim for intrastate access charges in each state, together with interest, and together with attorneys fees incurred in this proceeding.


Count III (Contract Claims)

59.  The plaintiffs restate and reallege the contents of paragraphs 1 - 58 hereof with the full force and effect as if set forth hereat.

60.  As a matter of federal and state law, the terms of access tariffs filed by CLECs and ILECs with the Federal Communications Commission, or their website postings, (for interstate services), and tariffs filed with state regulatory agencies (for

intrastate services), constitute valid, binding and enforceable contracts between the CLECs and any IXC which utilizes, orders, or accepts access services governed by such tariffs or website postings.  As a result thereof, IXCs, including the defendants, which utilize, order, or accept the carrier access services provided by the plaintiffs have a contractual obligation and liability to pay the lawful charges for such access services set forth in such tariffs or website postings.

61.  The unexcused and unjustified refusal of the defendants to pay the lawful interstate and intrastate charges for access services provided by the plaintiffs to the defendants constitutes a breach of contract enforceable by this Court.  As a result of said breach of contract, each of the plaintiffs has been damaged by the defendants in the amounts set forth in Exhibit "A", plus interest and attorneys fees.


Count IV (Account Stated)

62.  The plaintiffs restate and reallege the contents of paragraphs 1 - 61 hereof with the full force and effect as if set forth hereat.

63.  Despite having received detailed monthly bills for access services issued by Access Billing on behalf of plaintiffs, defendants have failed to object to or dispute any part of such bills, and have offered no statement of disagreement with the amounts billed or their correctness.  As a result, defendants have explicitly or implicitly accepted such bills as correct.

64.  By ordering, accepting and using the access services provided by plaintiffs, defendants have explicitly and implicitly, and by operation of law, agreed to pay the lawful charges therefor.

65. As a result, defendants are indebted to plaintiffs for the amounts billed for carrier access services as an Account Stated, and are liable to plaintiffs for the amounts set forth in Exhibit "A", plus lawful interest and attorneys fees.

Count V (Unjust and Unreasonable Practice/Undue Discrimination)

66. The plaintiffs restate and reallege the contents of paragraphs 1 - 65 hereof with the full force and effect as if set forth hereat.

67. Section 201 of the Federal Communications Act of 1934 provides that any charge, practice, classification or regulation of a common carrier that is unjust or unreasonable shall be unlawful.

68. Section 202 of the Federal Communications Act of 1934 provides that it shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communications service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class or persons, or locality, or to subject any particular person, class or persons, or locality to any undue or unreasonable prejudice or disadvantage.

69. On information and belief, the defendants obtain and use interstate and intrastate access services provided by other CLECs similarly situated to the plaintiffs, and make payment to such other CLECs as required by the interstate tariffs and website postings, and intrastate tariffs, of such other CLECs. The failure and refusal of defendants to make proper payments to the plaintiffs for access services, while making payments for similar services provided by similarly situated CLECs, constitutes an unjust and unreasonable discrimination prohibited by Section 202 of the

20

Federal Communications Act.

70.  The failure of the defendants to pay the lawfully applicable tariff charges of the plaintiffs, or the rates set forth in website postings, for interstate and intrastate access services constitutes an unjust and unreasonable practice on the part of the defendants in violation of Section 201(b) of the Federal Communications Act.

71.  Section 206 of the Federal Communications Act provides that in case any common carrier shall engage in any conduct prohibited or declared to be unlawful by the Federal Communications Act, or shall omit to do any act required to be done by such Act, such common carrier shall be liable to the person or persons injured for the full amount of damages sustained in consequence of any such violation, together with reasonable attorneys fees to be fixed by the court in every case of recovery, which attorneys fee shall be taxed and collected as part of the cost in the case.

72.  Accordingly, the defendants are liable to the plaintiffs for the damages sustained by the defendants' failure to pay the lawful access charges (covering periods through November, 2002), as set forth in Schedule A, plus interest, plus plaintiffs' reasonable attorneys fees.


Prayer for Relief

WHEREFORE, in light of above, the plaintiffs, and each of them, respectfully request this Court to issue a Judgment against the defendants on all counts as follows:

(a)      Damages to each plaintiff in the amount set forth in Exhibit "A" hereto, or otherwise determined at trial, plus interest;

21

(b)     Plaintiffs' costs of suit herein, including without limitation their

reasonable attorneys fees actually incurred;

( c)    Such other relief as may to this court appear just and proper.

Yours, etc.

Plaintiffs New York Access Billing,
LLC; RCN Telecom Services, Inc.;
Broadview Networks, Inc.;
Broadview Network Plus
Acquisition Corp.; Essex
Communications Corp.; Spectrotel,
Inc.; Conversent Communications
of New York, LLC.; Conversent
Communications of New Jersey,
LLC; Conversent Communications
of Connecticut, LLC; Conversent
Communications of Massachusetts,
LLC; and Cablevision Lightpath,
Inc.

By:     Keith J. Roland
        Roland, Fogel, Koblenz &
           Petroccione, LLP
        Their Attorneys
        One Columbia Place
        Albany, New York 12207
        Bar Roll # 601256
        (518) 434-8112

Dated: Albany, New York
       April 10, 2003

22

**Interstate Charges**

| | CT | DC | FL | MA | MD | NH | NJ | NY | PA | RI | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Advamtel (Plan B) aka Spectrotel, Inc. | | | | 796.79 | | | 316.06 | 8,000.96 | 2,141.40 | | |
| Broadview | | | | 1,197.12 | | | 2,183.11 | 20,340.08 | 16,908.58 | | |
| Cablevision Lightpath | 3,297.49 | | | | | | 472.38 | 37,535.87 | | | |
| Conversent Companies | 1,186.80 | | | 8,098.60 | | | 2,301.42 | 2,060.91 | | | |
| Essex | | | | 113.81 | | | 1,599.70 | 3,557.34 | 2,255.16 | | 17. |
| Broadview Acquisitions Corp (Network Plus) | 88.96 | | 26.89 | 1,599.10 | | | 526.96 | 1,327.12 | 454.91 | | |
| RCN | | 487.28 | | 2,021.97 | 340.11 | | | 2,591.75 | 63,639.21 | | 1. |
| | 4,573.25 | 487.28 | 26.89 | 13,827.39 | 340.11 | - | 7,399.63 | 75,414.03 | 85,399.26 | - | 18. |

**Intrastate Charges**

| | CT | DC | FL | MA | MD | NH | NJ | NY | PA | RI | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Advamtel (Plan B) aka Spectrotel, Inc. | | | | 13.20 | | | 212.08 | 185.93 | 990.46 | | |
| Broadview | | | | 30.50 | | | 1,118.96 | 576.70 | 2,387.09 | | |
| Cablevision Lightpath | 582.29 | | | | | | 249.71 | 734.73 | | | |
| Conversent Companies | 699.15 | | | 2,994.42 | | | 4,105.57 | 169.30 | | | |
| Essex | | | | 2.88 | | | 2,006.53 | 161.39 | 886.92 | | 11.7 |
| Broadview Acquisitions Corp (Network Plus) | 25.32 | | 10.80 | 41.17 | | | 256.19 | 30.35 | 147.61 | | |
| RCN | | - | | 124.25 | 75.76 | | | 89.49 | 34,191.41 | | 2.5 |
| | 1,306.76 | - | 10.80 | 3,206.42 | 75.76 | - | 7,949.04 | 1,947.89 | 38,603.49 | - | 14.3 |

ATTACHMENT "A"